## DAVIS LOCKE *vs.* GEORGE H. MOTLEY.

The owner of land upon the banks of a river, in which the tide ebbs and flows, does not make himself liable to an action by planting stakes on his own flats in such a manner as to obstruct another person's right of taking fish.

*It seems*, that the *St.* of 1788, *c.* 68, § 4, conferring on the inhabitants of Cambridge, Charlestown and Medford the right of taking fish in Mystic River, " with any kind of fishing implement," on certain days, does not give the right to place stakes or other permanent fixtures in the soil of another, as incidental to the right of fishery.

ACTION OF TORT, brought by an inhabitant of West Cambridge, for the interruption of his right of taking fish in Mystic River. The defendant justified as the servant of Joseph Teel, the owner of land on the bank of the river.

At the trial in the court of common pleas, it was in evidence that the plaintiff was the lessee of a large tract of land bounding upon Mystic River, on the southerly side thereof, in that part of West Cambridge which was set off from Charlestown by *St.* 1842, *c.* 24; that on this land was a dry beach, which had been used and improved by the owner of this land for ten years, for fishing with a seine and weir, and at which the seine was always hauled on shore; and that the plaintiff, on the day mentioned in the writ, had a weir established in and across the river at this place, which consisted of a row of stakes driven into the bottom of the river six feet apart, to which a stanner, or upright net across the river, and seine, or drag-net, were attached, when fishing.

It also appeared that Mystic River was a navigable river, in which the tide ebbed and flowed; that Joseph Teel was the owner of a large tract of land on the northerly side of Mystic River; and that the defendant, as Teel's servant and under his direction, went upon the flats appurtenant to said land, below the plaintiff's weir, and there drove down stakes for the purpose of preventing the plaintiff's fishing as aforesaid; and that this was the trespass complained off.

Upon this evidence, *Hoar*, J. instructed the jury that the plaintiff could not recover. A verdict was returned for the defendant, and the plaintiff alleged exceptions.

*M. G. Cobb*, for the plaintiff.

*E. Buttrick*, for the defendant.

BIGELOW, J.   This seems to us to be a very plain case.   Admitting the right of the plaintiff, as an inhabitant of West Cambridge, under the statutes of the Commonwealth, to take fish in Mystic River on certain days, he cannot, in the exercise of such right, prevent the defendant from making a lawful use of his own property.   The colony ordinance of 1641 (Anc Chart. 148) secures to the inhabitants the right of free fishing and fowling in ponds, bays and rivers, so far as the sea ebbs and flows, within the precincts of the town where they dwell, unless the freemen of the town or the general court shall otherwise appropriate them.   But the ordinance of 1647, usually printed with the ordinance of 1641, provides that the property in flats shall, under certain restrictions, be in the proprietors of the adjoining upland, subject only to the right of persons to pass and repass over such flats for fowling and fishing, until they are actually reclaimed or occupied by the proprietor of the upland.   *Weston* v. *Sampson*, 8 Cush. 347.   *Commonwealth* v. *Alger*, 7 Cush. 53, 68.   It was subject to this ancient right of property in the flats appurtenant to upland, that the legislature, under the power reserved to them in the ordinance, enacted the statutes defining and regulating the right of fishery in Mystic River, among the several towns bordering thereon. *Sts.* 1788, *c.* 68; 1793, *c.* 66, § 1; 1820, *c.* 67.

These statutes conferred no additional rights, over private property, upon the inhabitants of the town to whom the right of fishery was reserved.   So long as the adjoining proprietor left the flats open and unoccupied, the inhabitants had the right to take fish upon them; but the right of the proprietor to use, occupy and improve them, by inclosing them, or erecting fixtures thereon, remained unimpaired.   8 Cush. 348.   The defendant therefore, in driving stakes upon the flats appurtenant to upland, under the authority and by direction of the owner thereof, was exercising a lawful right; and although it may have obstructed the plaintiff in the taking of fish, and prevented him from using a particular mode of carrying on his

fishery, it can give him no right of action therefor against the defendant. In this respect, the right of the public to "free fishing and fowling" is subordinate to the right of property in the soil belonging to the individual.

If it were necessary to the decision of the case, we should be strongly inclined to hold, that the plaintiff, under a common right of fishery, had no right to fix stakes in the flats of a riparian owner, for the purpose of fastening a seine across the river, unless he could show a prescriptive right to such use of the flats, or a necessity for so doing in order to the exercise of the right of fishery. The statute of 1788, *c.* 68, § 4, only authorizes the use of "any kind of fishing implement" in the taking of fish in Mystic River. This term would include, without doubt, the use of lines, seines, spears, nets and any of the ordinary and usual modes of catching fish in rivers or bays. But it would seem quite clear that it would not give the right to place stakes or other permanent fixtures in the soil of another, as incidental to the right of fishery. See *Coolidge* v. *Choate*, 11 Met. 82.        *Exceptions overruled*